JAMES ORCUTT *v.* COMMISSIONER OF
CORRECTION
(SC 17836)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

---

726

Argued April 9—officially released December 6, 2007*

*Erik T. Lohr,* deputy assistant state's attorney, with whom, on the brief, was *Christopher L. Morano,* former chief state's attorney, for the appellant (respondent).

* December 6, 2007, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Tejas Bhatt*, deputy assistant public defender, with whom were *Jennifer L. Bourn*, special deputy assistant public defender, and, on the brief, *Sandra J. Crowell*, assistant public defender, for the appellee (petitioner).

*Opinion*

PALMER, J. The petitioner, James Orcutt, filed this habeas action, alleging that the sentence he had received for certain drug offenses violated his right to be sentenced in accordance with the terms of his plea agreement as mandated by *Santobello* v. *New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).[1] Following a trial, the habeas court, *Fuger, J.*, rendered judgment granting the petitioner's amended petition for a writ of habeas corpus, from which the respondent, the commissioner of correction, appealed,[2] claiming that (1) the petitioner failed to allege and prove cause and prejudice to excuse his procedural default, (2) the findings of the habeas court concerning the intent of the parties to the plea agreement were clearly erroneous, and (3) the habeas court exceeded its authority by effectively resentencing the petitioner. We reject the respondent's first two claims and, therefore, uphold the habeas court's conclusion that the petitioner is entitled to be resentenced in accordance with the terms of his plea agreement. We agree with the respondent, however, that the habeas court should have directed the trial court to resentence the petitioner.

[1] In *Santobello*, the United States Supreme Court held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello* v. *New York*, supra, 404 U.S. 262.

[2] After the habeas court rendered judgment for the petitioner, the respondent filed a petition for certification to appeal in accordance with General Statutes § 52-470 (b). The habeas court granted the respondent's petition for certification, and the respondent appealed from the judgment of the habeas court to the Appellate Court. We then transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The record reveals the following relevant facts and procedural history. On January 14, 2001, the petitioner was arrested and charged, under Docket No. HHD-CR-01-0176626-T (Hartford case), with possession of narcotics, possession of drug paraphernalia and sexual assault in the first degree. The petitioner was in pretrial custody on these charges a total of 597 days. On March 6, 2003, the petitioner posted bond and was released.

On May 28, 2003, in accordance with a plea agreement, the petitioner pleaded guilty in the Hartford case to burglary in the second degree, unlawful restraint in the second degree and possession of narcotics. The trial court delayed sentencing, however, and permitted the petitioner to remain free on bond so that he could spend time with his mother, who was severely ill.[3] On July 21, 2003, before the petitioner's sentencing in the Hartford case, he was arrested and charged, under Docket No. H12M-CR-03-0189630-S (Manchester case), with use of drug paraphernalia, attempted possession of under four ounces of marijuana, possession of drug paraphernalia within 1500 feet of a school and possession of narcotics.

On August 1, 2003, the petitioner was sentenced in the Hartford case to a term of imprisonment of ten years, execution suspended after five years, and five years probation (Hartford sentence). Thereafter, the respondent posted 597 days of presentence confinement credit to the petitioner's Hartford sentence, reflecting his pretrial incarceration in that case and effectively advancing his release date in the Hartford case to December 12, 2006.

Approximately five weeks after the petitioner began serving his Hartford sentence, Attorney Jon D. Golas

---

[3] On July 9, 2003, while free on bond in the Hartford case, the petitioner was arrested for attempted possession of narcotics. He subsequently pleaded guilty to that charge. The conviction and sentence stemming from this arrest are not the subject of this appeal.

filed an appearance for the petitioner in the Manchester case.[4] The petitioner informed Golas that he had pleaded guilty in the Hartford case the previous month in return for a sentence that required him to serve a five year term of imprisonment.[5] The petitioner authorized Golas to attempt to negotiate a plea agreement pursuant to which he would be required to serve one additional year in prison upon the completion of his Hartford sentence.

On October 2, 2003, Golas attended a pretrial conference in the Manchester case with the trial court, *Norko, J.*, and Adam Scott, an assistant state's attorney (prosecutor). At the conference, Golas proposed a plea agreement pursuant to which the petitioner would agree to plead guilty to possession of narcotics in the Manchester case in return for a six year sentence, to run concurrently with the five year sentence that he had received in connection with the Hartford case. Jail credits were not discussed during the conference. According to Golas, however, it was his understanding, as well as the understanding of the trial court and the prosecutor, that the petitioner would serve one additional year of imprisonment following the expiration of the Hartford sentence.[6] The prosecutor and the court agreed to the proposed plea bargain.

---

[4] A different attorney had represented the petitioner in the Hartford case.

[5] The petitioner, however, did not inform Golas that he had spent nearly 600 days in pretrial confinement awaiting the disposition of the charges in the Hartford case.

[6] During the habeas proceeding, Golas testified as follows concerning the understanding of the trial court and the prosecutor with respect to the terms of the plea agreement:

"The Court: Would it be fair to say that it was your understanding, and to the best of your knowledge and belief, the understanding of Judge Norko and [the prosecutor] that [the petitioner] would spend one additional year in jail after his Hartford sentence?

"[Attorney Golas]: That's how I understood it, that they wanted him to do one extra year."

Following the pretrial conference, Golas informed the petitioner of the proposed plea agreement. Golas explained to the petitioner that, under that proposed agreement, the petitioner would serve one additional year after completing his Hartford sentence. The petitioner understood this to mean that he would be released from the sentence imposed in the Manchester case one year after his release date of December 12, 2006, in the Hartford case. On the basis of that understanding, the petitioner agreed to the plea bargain that Golas had negotiated.

Thereafter, on October 22, 2003, the petitioner pleaded guilty in the Manchester case. Prior to the plea canvass, the prosecutor set forth the terms of the plea agreement on the record, explaining that the petitioner had agreed to plead guilty in return for a six year term of imprisonment, and that that sentence would run concurrently with the five year sentence that the petitioner already was serving in the Hartford case. The petitioner indicated that he understood and agreed to the terms of the plea agreement, and the trial court sentenced the petitioner in accordance with the prosecutor's representations (Manchester sentence).

Shortly after his sentencing in the Manchester case, the petitioner met with a counselor at the correctional center where he was incarcerated and was informed that his newly calculated release date was October 11, 2009. The petitioner immediately contacted Golas and explained to him that this release date was incorrect because it would result in an effective sentence that was nearly two years longer than the sentence to which he had agreed under the terms of the plea agreement in the Manchester case. Golas contacted the records department of the department of correction, which confirmed that the petitioner was not scheduled to be released from his Manchester sentence until October 11, 2009. Golas also learned that the petitioner was not

entitled to be released until that date because the 597 days of presentence confinement time that he accrued while awaiting the disposition of the Hartford case may be credited toward his Hartford sentence *only*, and *not* toward his Manchester sentence. Thus, the concurrent six year sentence that the trial court had imposed in the Manchester case did not extend the petitioner's total effective period of incarceration by one year but, rather, by nearly three years.[7]

Golas then contacted the prosecutor in the Manchester case to inform him that the sentence that the trial court imposed in that case did not accurately reflect the agreement of the parties to the plea bargain. The prosecutor expressed a willingness to agree to a modification of the Manchester sentence pursuant to which the petitioner would be resentenced to a five year term of imprisonment, to run concurrently with the Hartford sentence, if the petitioner would agree to waive his right to sentence review.[8] The petitioner, however, rejected the prosecutor's offer.

[7] The petitioner does not dispute the accuracy of the respondent's calculation of his release date under the concurrent six year Manchester sentence. Indeed, he acknowledges that that calculation is correct under that sentence. See, e.g., *Cox* v. *Commissioner of Correction*, 271 Conn. 844, 852, 860 A.2d 708 (2004) ("[A]fter the respondent credits days served in presentence confinement to the first of two concurrent sentences, the days encompassed therein [have] been counted . . . once for the purpose of reducing all sentences imposed within the meaning of [General Statutes] § 18-98d (a) (1) (A). As a consequence, they [cannot] be applied again to advance the . . . discharge date for the [second] sentence without violating the proscription in the statute against double counting." [Internal quotation marks omitted.]). Rather, the petitioner contends that the sentence itself was improper because it does not reflect the plea agreement that the petitioner had entered into with the state. In other words, the petitioner claims that the Manchester sentence cannot stand because of its unintended consequences, namely, the extension of the petitioner's period of incarceration from one year to nearly three years beyond the expiration of his Hartford sentence.

[8] The modified sentence that the prosecutor proposed would have resulted in a release date of October 11, 2008.

Subsequently, Golas informed the petitioner that he could file a motion to vacate the petitioner's guilty plea in the Manchester case on the ground that that plea was induced by the promise of a sentence that he did not receive. The petitioner instructed Golas not to pursue that option because he wanted to seek the advice of new counsel as to whether he was entitled to enforce the terms of the plea agreement as he understood them, namely, that he would receive a sentence resulting in his release one year following the completion of the Hartford sentence.

Sometime thereafter, the petitioner, acting pro se, filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22.[9] After receiving no response from the court regarding his motion to correct,[10] the petitioner commenced this habeas action on August 25, 2004.[11] By letter dated September 9, 2004, the petitioner also inquired of the clerk of the court in Manchester about the status of his motion to correct an illegal sentence.[12] The petitioner, however, never received a response to that letter.

---

[9] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[10] Although the petitioner testified that he had filed the motion to correct an illegal sentence, he never produced a copy of that motion. Furthermore, there is nothing in the record to indicate that any such motion ever was docketed in the office of the clerk of the court in Manchester.

[11] The record does not indicate precisely when the petitioner filed his motion to correct an illegal sentence. Consequently, the record also is unclear as to how much time transpired from the time that the petitioner filed his motion to correct to the time that he filed this habeas action.

[12] That letter, a copy of which the petitioner produced, provides: "I recently filed a motion to correct an illegal sentence that originated out of your judicial district. Please contact me regarding this motion so I can prepare for the hearing. Thank you very much for your cooperation."

On August 19, 2005, the petitioner filed an amended petition for a writ of habeas corpus,[13] alleging, inter alia, that his guilty plea in the Manchester case "was induced by the promise of the state that he would serve a total effective sentence of [six] years, taking into account his [five] year sentence [in the] Hartford [case], with the expectation that the sentences would result in a maximum discharge date of on or about [December 10, 2007]." Pursuant to Practice Book § 23-30,[14] the respondent filed a return to the amended habeas petition in which the respondent raised the affirmative defense that the petitioner's claim was procedurally defaulted because he had failed to pursue it in the trial court or on direct appeal; see *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 38, 779 A.2d 80 (2001) ("before seeking to correct an illegal sentence in the habeas court, a defendant either must raise the issue on direct appeal or file a motion pursuant to [Practice Book] § 43-22[15] with the trial court"); and because the petitioner could not establish cause and prejudice to excuse the default. In accordance with Practice Book

[13] Although the petitioner was not represented by counsel when he filed his habeas petition, he did have counsel when he filed his amended petition, and he has been represented by counsel since that time.

[14] Practice Book § 23-30 provides: "(a) The respondent shall file a return to the petition setting forth the facts claimed to justify the detention and attaching any commitment order upon which custody is based.

"(b) The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

[15] "The appropriate standard for reviewability of habeas claims that were not properly raised at trial . . . or on direct appeal . . . because of a procedural default is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . ." (Citations omitted; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 40.

§ 23-31,[16] the petitioner filed a reply to the return. That reply provided simply that the "[p]etitioner does not have to show cause and prejudice."[17]

Thereafter, at a pretrial hearing on the habeas case, counsel for the respondent made an oral motion to dismiss the petitioner's *Santobello* claim on grounds of procedural default. Specifically, counsel for the respondent asserted that, under *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 38, the petitioner first was required to pursue his *Santobello* claim in the trial court by way of a motion to correct an illegal sentence. The respondent further stated that, "in fact, the petitioner has filed a motion to correct an illegal sentence with the trial court. That motion to correct . . . has not yet been ruled [on]. I'm not sure exactly what the status of it is, but I think that it would be premature for this court to look at it before the trial court has had an opportunity to rule on [it] . . . ." The habeas court denied the respondent's motion, explaining, inter alia, that the petitioner was entitled to an opportunity to establish cause and prejudice for any such procedural default.[18] The habeas court also noted, however, that the respondent was free to renew that claim at a later time.

Subsequently, on January 27, 2006, the habeas court conducted a trial on the allegations of the amended

[16] Practice Book § 23-31 provides: "(a) If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply.

"(b) The reply shall admit or deny any allegations that the petitioner is not entitled to relief.

"(c) The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. The reply shall not restate the claims of the petition."

[17] We construe this reply to the respondent's return, which contained a claim of procedural default, as an assertion by the petitioner that his *Santobello* claim was not procedurally defaulted.

[18] The respondent did not inform the court that the petitioner had not raised a claim of cause and prejudice but, rather, had maintained that the petitioner had procedurally defaulted.

habeas petition. The petitioner and Golas testified and counsel for the respondent called no witnesses. In closing argument, counsel for the petitioner maintained, inter alia, that the petitioner's *Santobello* claim was not procedurally defaulted because the petitioner had filed a motion to correct an illegal sentence but had received no response from the trial court. The petitioner's counsel also noted that the petitioner subsequently had forwarded a letter to the court inquiring as to the status of his motion to correct but again received no response from the court. The petitioner's counsel further asserted that, in view of the fact that petitioner had been incarcerated and was acting pro se when he filed his habeas petition and submitted his follow-up letter, it would be unfair and improper for the court to reject his claim as procedurally defaulted under *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 38.[19]

At the conclusion of the hearing, the habeas court rendered judgment granting the amended habeas petition.[20] In its oral ruling, the habeas court observed that, because the prosecutor in the Manchester case had not testified, there was no direct evidence of his understanding of the terms of the plea agreement. The court further noted that the only evidence of the prosecutor's intent was the uncontroverted testimony of Golas, whom the court credited fully. Relying primarily on that

[19] Specifically, the petitioner's counsel argued: "[The] respondent's counsel says that if [the petitioner] filed [a motion to correct] in Manchester, it's [his] duty to go back and follow up. Well, [the petitioner] followed up, he wrote a letter. [But] . . . [the] petitioner is incarcerated. He can't very well walk up to [the court in] Manchester and demand the clerk [of the court] to do something. He's done all he can. If the state does not respond—if the court does not respond, I think, at that point, his responsibility ends . . . [a]nd he should not be made to wait indefinitely for the court to respond before he can file a habeas petition."

[20] We note that the petitioner also alleged in his amended habeas petition that Golas' representation was constitutionally deficient. The habeas court did not address this claim, however, in light of its determination that the petitioner was entitled to prevail on his *Santobello* claim.

testimony, the habeas court found that the Manchester sentence did not comport with the parties' understanding as to how much time the petitioner actually would be required to serve. Specifically, the habeas court found that "the intent of the parties in negotiating [the] [plea] agreement [was] that the petitioner would finish out his five year sentence in Hartford and then serve one additional year." The habeas court then reiterated "that it was the intent of all parties that when the Hartford sentence expired on [December 10, 2006], the petitioner would then serve an additional year, which would have made his expected release date in the vicinity of [December 10, 2007]." To effectuate its finding, the habeas court ordered the respondent "to treat the Manchester [sentence as if it were] a total effective sentence of one year to serve consecutive[ly] to the Hartford sentence," thereby requiring a significant modification in the petitioner's release date, that is, from October, 2009, to December, 2007.[21] The habeas court did not expressly refer to the respondent's claim of procedural default or to the issue of cause and prejudice in its oral ruling.[22]

On appeal, the respondent contends that the habeas court improperly addressed the merits of the petitioner's *Santobello* claim because the petitioner had procedurally defaulted on that claim and had failed to plead or establish cause and prejudice. The respondent further contends that, even if this court concludes that the habeas court properly reached the merits of the petitioner's claim, the habeas court improperly determined that the concurrent six year sentence in the Manchester

---

[21] The habeas court also observed that the petitioner was entitled to approximately ten days of presentence confinement credit toward his Manchester sentence. The respondent apparently does not dispute that credit, which is not the subject of this appeal.

[22] Immediately after the court's ruling, counsel for the respondent orally requested that the court provide some "additional detail on the facts underlying" its decision. The court denied that request.

case did not reflect the plea bargain to which the petitioner and the state had agreed. Finally, the respondent maintains that the habeas court does not have the authority to resentence the petitioner, which is reserved exclusively for the trial court.

I

We first address the respondent's claim that the habeas court should not have reached the merits of the petitioner's claim because of the petitioner's procedural default and failure to demonstrate cause and prejudice to excuse that default. It is true that, under *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 38, the petitioner first was required to raise his *Santobello* claim via a motion to correct an illegal sentence or on direct appeal. As a general matter, a defendant who files a petition for a writ of habeas corpus will be deemed to have procedurally defaulted unless he exhausts at least one of those remedies. In the present case, the petitioner claims that, under the circumstances, his unsuccessful efforts to have his motion to correct docketed and heard were sufficient to warrant a finding by the habeas court that his habeas petition was not subject to dismissal for procedural default. The respondent contends that there is nothing in the record to indicate that the habeas court made such a finding, and, in any event, the record is inadequate to support any such finding.

As we have indicated, the habeas court made no express finding on the threshold issue of procedural default. Because the habeas court addressed the merits of the petitioner's *Santobello* claim, however, and because a finding that the petitioner had procedurally defaulted on his *Santobello* claim necessarily would have precluded the habeas court's consideration of the merits of the petitioner's claim, we must presume that the habeas court implicitly decided the respondent's

procedural default claim in the petitioner's favor.[23] Having failed to seek an articulation by the habeas court on the issue of procedural default,[24] the respondent cannot now complain that the record does not contain an express finding by the habeas court on that issue. "[T]o the extent that the court's decision was ambiguous, it was the [respondent's] duty . . . to seek an articulation . . . . It is . . . the responsibility of the appellant to move for an articulation or rectification of the record [when] the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter. . . . [A]n articulation is appropriate [when] the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis [on] which the trial court rendered its decision, thereby sharpening the issues on appeal."[25] (Citations omitted; internal quotation marks

[23] As a general matter, however, we emphasize that a habeas court should expressly address and resolve the threshold issue of procedural default when the issue has been raised as a defense. Cf. *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 447–48 n.18, 936 A.2d 611 (2007) (habeas court should decide threshold issue of cause and prejudice before reaching merits of habeas petition).

[24] The oral request by the respondent's counsel for some "additional detail on the facts underlying" its decision; see footnote 22 of this opinion; cannot be characterized as a motion for articulation or its equivalent because, among other things, the request lacked specificity. See Practice Book § 66-5 (motion for articulation "shall state with particularity the relief sought"). Indeed, in making his request, the respondent's counsel expressly acknowledged that "it could be done through a motion for articulation . . . ." The respondent's counsel, however, never filed such a motion.

[25] On the basis of certain comments that the habeas court made during the course of the proceedings, the respondent claims that that court rejected the respondent's claim of procedural default for an improper reason, namely, that a *Santobello* claim is not properly raised in a motion to correct an illegal sentence. Although we agree with the respondent that a motion to correct an illegal sentence under Practice Book § 43-22 *is* a proper vehicle for a *Santobello* claim; e.g., *State* v. *Henderson*, 93 Conn. App. 61, 67, 888 A.2d 132 ("[a] sentence imposed in an illegal manner [within the meaning

omitted.) *Smith* v. *Muellner*, 283 Conn. 510, 537, 932 A.2d 382 (2007); see also Practice Book §§ 61-10 and 66-5. We conclude, therefore, that the habeas court determined, albeit by implication, that the petitioner had not procedurally defaulted.

## II

We turn next to the respondent's claim that the record does not support the conclusion that the petitioner had not procedurally defaulted. Specifically, the respondent contends that the petitioner was required to pursue his motion to correct an illegal sentence in the trial court, and that his failure to do so constituted a procedural default. In evaluating this claim, we must consider the evidence, including any reasonable inferences that may be drawn therefrom, in the light most favorable to the petitioner. E.g., *Smith* v. *Greenwich*, 278 Conn. 428, 440–41, 899 A.2d 563 (2006). Viewed in that light, we

of Practice Book § 43-22] is one within the relevant statutory time limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying solely on accurate information or considerations solely in the record, *or his right that the government keep its plea agreement promises*" [emphasis added; internal quotation marks omitted]), cert. denied, 277 Conn. 927, 895 A.2d 800 (2006); we disagree with the respondent that the habeas court's ruling was predicated on that court's misapprehension of the law. First, it is unclear from the comments of the habeas court on which the respondent relies that that court had concluded that a *Santobello* claim is not properly raised by way of a motion to correct an illegal sentence. Second, because the habeas court's oral ruling was silent with respect to the issue of procedural default, and because the respondent had failed to seek an articulation on that issue, we will not presume that the habeas court's ruling was based on a misunderstanding of the law governing a motion to correct an illegal sentence. Indeed, in the absence of an articulation—which the appellant is responsible for obtaining—we presume that the trial court acted properly. See *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.*, 224 Conn. 313, 321–22, 617 A.2d 1388 (1992) ("[I]t was the [appellant's] responsibility to present a record adequate for appellate review of its claim of error. In the absence of such a record, we presume that the trial court, in rendering its judgment in favor of the [appellees], undertook the proper analysis of the law and the facts.").

conclude that the evidence was sufficient to support the habeas court's implicit determination that the petitioner had not procedurally defaulted and, therefore, that the petitioner was entitled to a decision on the merits of his *Santobello* claim.

According to the petitioner, he filed his motion to correct an illegal sentence upon learning of the respondent's calculation of his release date for the Manchester sentence. After receiving no indication from the court that it had received the motion, the petitioner sent a letter to the court inquiring about the status of the motion. The petitioner testified that he also heard nothing from the court in response to that letter. At the time, the petitioner was incarcerated and proceeding pro se. Although the record does not reveal precisely when the petitioner filed his motion to correct, we do know that, by the time of the trial in the petitioner's habeas action in late January, 2006, nearly seventeen months had transpired from the date that the petitioner had forwarded his follow-up letter to the trial court in early September, 2004. Under these highly unusual circumstances—and with particular regard for the fact that the petitioner was incarcerated and, for a period of time, acting pro se[26]—we cannot conclude that the

---

[26] "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party." (Internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005). "The courts adhere to this rule to ensure that pro se litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . ." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 569, 877 A.2d 761 (2005).

We also note that the factual scenario presented by this case is highly unlikely to recur. For example, under our recent decision in *State* v. *Casiano*, 282 Conn. 614, 620, 627–28, 922 A.2d 1065 (2007), a defendant is entitled to the assistance of counsel for the purpose of filing a motion to correct an illegal sentence whenever it is determined that a sound basis exists for such a motion. In light of our holding in *Casiano*, it is much more likely that, in the future, a defendant who wishes to challenge the legality of his or her sentence will have the benefit of the assistance of counsel in doing so.

habeas court was required to find that the petitioner had procedurally defaulted by not doing more in pursuit of his motion to correct an illegal sentence.[27]

### III

We now address the respondent's contention that the habeas court's findings regarding the terms of the plea bargain in the Manchester case were clearly erroneous. We also reject this claim.

We begin our analysis with the applicable standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed [on appeal] unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007). Thus, the court's factual findings are entitled to great

Moreover, to the extent that this case involves a clerical error or miscommunication, we have no reason to believe that such errors occur with any frequency.

[27] We nevertheless agree with the respondent that, for a variety of reasons, it generally is far preferable for claims, such as the one that the petitioner raises in the present case, to be decided by the sentencing court pursuant to a motion to correct an illegal sentence. See *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 38–39 (explaining relative benefits of motion to correct an illegal sentence). We expect that the vast majority of such claims will be resolved through that vehicle. As we have indicated, the present case represents a rare exception because of its unique procedural and factual background. That background notwithstanding, we see no reason why the habeas court in the present case could not have stayed the proceedings in that court to allow for an expedited resolution of the petitioner's motion to correct an illegal sentence in the trial court.

weight. E.g., *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 53, 861 A.2d 473 (2004). Furthermore, "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 291, 933 A.2d 256 (2007).

The task of the habeas court was to ascertain, on the basis of the evidence presented, the actual intent of the parties to the plea agreement in the Manchester case. E.g., *State* v. *Nelson*, 23 Conn. App. 215, 219, 579 A.2d 1104 ("[when] there is a dispute as to the terms of a plea agreement, [the] analysis turns on the real intent of the parties" [internal quotation marks omitted]), cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991). As we previously have explained, the habeas court found that the parties to the plea agreement intended for the petitioner to receive a sentence that would result in his release from prison on or about December 10, 2007, one year following the expiration of his Hartford sentence on December 10, 2006. In making this finding, the habeas court relied primarily on the testimony of Golas, who stated unequivocally that it was his intent and the intent of the petitioner, the trial court and the prosecutor that the petitioner would serve one additional year following the expiration of the Hartford sentence. After noting that Golas is an officer of the court who "has nothing to gain in this matter," the habeas court characterized Golas' testimony as "clear and credible . . . ." Furthermore, the petitioner's testimony concerning his understanding of the agreement was entirely consistent with Golas' testimony.[28] Finally, the

---

[28] The habeas court also noted that the willingness of the prosecutor in the Manchester case to agree to a sentence modification "tend[ed] to support

respondent adduced no evidence, such as testimony from the prosecutor in the Manchester case, that would have cast serious doubt on the petitioner's claim. In such circumstances, we see no reason to disturb the findings of the habeas court, which, as we have indicated, are entitled to great weight.[29]

Although we defer to the reasonable findings of the habeas court regarding the intent of the parties to the plea agreement, we agree with the respondent that the habeas court improperly ordered the respondent to establish a new release date for the petitioner. In doing so, the habeas court effectively resentenced the petitioner. This was inappropriate.

As the habeas court explained, there was more than one sentence that the trial court could have imposed that would have effectuated the parties' intent as determined by the habeas court.[30] In such circumstances, the trial court should be afforded the opportunity to determine which of those sentences to impose. See *Cobham* v. *Commissioner of Correction*, supra, 258

the credible testimony of . . . Golas." Specifically, the habeas court expressed the view that it was unlikely that the prosecutor would have agreed to a sentence modification unless he believed that the petitioner's claim had at least some merit.

[29] The habeas court also made it clear that, on the basis of the sentence actually imposed in the Manchester case, the respondent's calculation of the petitioner's release date was correct. The habeas court underscored that the sentence imposed did not comport with the understanding of the parties to the plea agreement because that agreement called for the petitioner to serve only one additional year following the expiration of his Hartford sentence. As the habeas court observed, the concurrent six year sentence did not achieve that result because of the fact, undisputed by the parties, that the petitioner was entitled to 597 days of presentence confinement credit toward the Hartford sentence only, and not toward his sentence in the Manchester case. See footnote 7 of this opinion.

[30] The habeas court stated: "Now, there was a variety of ways in which [the intent of the parties] could have been accomplished. . . . [For example] [i]t could have been done with a flat one year sentence to [run] consecutive[ly] to the Hartford sentence. It could have been done with a sentence of approximately four years and four months . . . ."

Conn. 39 (only trial court has authority to resentence defendant to conform to terms of plea agreement). We therefore agree with the respondent that the habeas court should have directed the trial court to resentence the petitioner in accordance with the habeas court's finding that, under the plea agreement, the petitioner is entitled to receive a sentence that will result in his release one year after the expiration of his Hartford sentence.

The judgment is affirmed insofar as the habeas court concluded that the petitioner's plea agreement in the Manchester case requires the petitioner to serve one additional year of imprisonment following the expiration of his sentence in the Hartford case; the judgment is reversed insofar as it directs the respondent to establish a new release date for the petitioner and the case is remanded to the habeas court with direction to issue a writ of habeas corpus directing that the petitioner be resentenced by the trial court in accordance with the terms of the plea agreement in the Manchester case.

In this opinion the other justices concurred.