MICHAEL DAWSON *v.* COMMISSIONER OF
CORRECTION
(AC 27528)

Flynn, C. J., and Beach and Robinson, Js.

Argued January 3—officially released March 25, 2008

*Mary Boehlert*, special public defender, for the appellant (petitioner).

*Kathryn Ward Bare,* deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Erik T. Lohr,* deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Michael Dawson, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) found that he had violated the terms of his plea agreement, (2) concluded that he failed to prove that he had received ineffective assistance of counsel and (3) rejected his claim that the prosecutor was improperly involved in his representation.[1] We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. On August 29, 2002, the petitioner appeared before the court, *Hickey, J.,* and entered a plea of guilty under the *Alford* doctrine[2] to possession of narcotics with intent

[1] The respondent, the commissioner of correction, contends that the court should not have reached the merits of the petitioner's claims regarding the terms of the plea agreement or his claim regarding improper involvement by the prosecutor because these claims were procedurally defaulted, and the petitioner failed to demonstrate cause and prejudice to excuse that default. Although the court made no express finding on the issue of procedural default or cause and prejudice in its oral ruling, it denied the respondent's motion to dismiss for failure to demonstrate cause and prejudice and then subsequently decided the merits of the claims. The respondent failed to seek an articulation on the issue of procedural default and cannot now complain that the record does not contain an express finding by the court on that issue. See *Orcutt* v. *Commissioner of Correction,* 284 Conn. 724, 737–41, 937 A.2d 656 (2007) (habeas court implicitly determined issue of procedural default in favor of petitioner where it did not expressly decide issue of procedural default but decided merits of claim). The respondent did not claim procedural default in its return with respect to the petitioner's ineffective assistance claims, and the court addressed those claims on the merits.

[2] See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

to dispense or sell in violation of General Statutes § 21a-277 (a), two counts of failure to appear in the first degree in violation of General Statutes § 53a-172 and sale of a controlled substance in violation of General Statutes § 21a-277 (b). The petitioner also admitted to a violation of the conditions of his probation. In connection with his guilty pleas, the petitioner agreed to certain conditions of probation, as well as alternative sentences, the imposition of which would be based on his compliance with the terms of the *Garvin* agreement.[3] Under the terms of the agreement, the petitioner was to appear for sentencing on September 13, 2002, at 10 a.m. If the petitioner complied, he would be sentenced to ten years incarceration, execution suspended after six years, and five years probation, and the state would nolle the petitioner's other charges on the docket pending at the time of the plea agreement. If the petitioner failed to appear for sentencing at 10 a.m. on September 13, 2002, he then would be sentenced to ten years incarceration, execution suspended after eight years, and five years probation, and the state would not nolle his other pending charges.

The petitioner failed to appear for sentencing at 10 a.m. on September 13, 2002, and the court, *Reynolds, J.*, ordered bond forfeitures and rearrest warrants on all outstanding files and ordered that the petitioner be held without bond on the files to which he already had entered guilty pleas. When the petitioner subsequently arrived at the courthouse sometime between 10:55 a.m. and 2:20 p.m. that same day, the court recalled the matter and, after hearing argument from both counsel, vacated the bond forfeitures and rearrest warrants and

---

[3] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by the defendant's violation of a condition of the agreement. See *State* v. *Garvin*, [242 Conn. 296, 299–302, 699 A.2d 921 (1997)]." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 3 n.1, 895 A.2d 771 (2006).

ordered the petitioner held without bond on the files to which he previously had entered guilty pleas. The court then continued the matter until September 24, 2002, in order for the court that had overseen the plea negotiations, *Kavanewsky, J.*, to determine whether there had been a violation of the *Garvin* agreement.

On September 24, 2002, the court, *Kavanewsky J.*, after hearing argument from both sides, found that the petitioner had not complied with the terms of the plea agreement and imposed a sentence of ten years incarceration, execution suspended after eight years, and five years probation.

Thereafter, on March 26, 2003, the petitioner pleaded guilty to possession of narcotics with intent to sell in violation of § 21a-277 in connection with his August 21, 2002 arrest, which was not included in the *Garvin* agreement. The court, *Hickey, J.*, sentenced the petitioner to fifteen years incarceration, execution suspended after eight years, and five years probation to run concurrently with the sentence he was then serving as a result of his first guilty pleas. The petitioner did not file a direct appeal.

The petitioner thereafter filed an amended petition for a writ of habeas corpus, alleging, inter alia, abrogation of the plea agreement, ineffective assistance of counsel regarding representation by his trial counsel, Stephen Feinstein, and improper involvement of Michael A. DeJoseph, the prosecutor, in his representation. The court rejected the petitioner's claims but later granted the petition for certification to appeal to this court. This appeal followed. Additional facts will be set forth as necessary.

I

The petitioner first claims that the court improperly found that he had violated the terms of the plea

agreement when he arrived at court on the day of sentencing after 10 a.m. We disagree.

We first set forth our standard of review. "[A] habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Dickinson* v. *Mullaney*, 284 Conn. 673, 678, 937 A.2d 667 (2007). When reviewing a finding regarding a breach of a plea agreement, the standard of review is whether, on the basis of the evidence, the court's finding of a breach of the agreement was clearly erroneous. See *State* v. *Small*, 78 Conn. App. 14, 23, 826 A.2d 211 (2003).

The court's factual finding that the petitioner had violated the terms of the *Garvin* agreement was not clearly erroneous. The court found that, according to the agreement between the parties, "the case was to be continued until September 13, 2002, at 10 a.m. for sentencing. If the petitioner showed up on September 13, 2002, at 10 a.m., then the court would impose the agreed upon sentence, and the state would nolle all open charges. However, it was made clear to all parties involved that if the petitioner failed to show up at 10 a.m. on September 13, 2002, then the sentence would go to ten years, suspended after the service of eight

years, to be followed by five years probation, and the state would not nolle any of the open charges." It further found that the petitioner "was not in court at 10 a.m. on September 13, 2002. Although his exact time of arrival is subject to some dispute, it is clear that [the petitioner] arrived no earlier than 10:55 a.m. and perhaps as late [as] 2:20 p.m. on September 13, 2002."

The court determined that the 10 a.m. requirement was part of the *Garvin* agreement.[4] On the basis of the evidence adduced at the habeas hearing, the habeas court found that the petitioner failed to arrive at court at 10 a.m. on September 13, 2002, as required under the terms of the *Garvin* agreement. Specifically, the petitioner testified before the habeas court that, as part of the agreement, he was required to arrive at court at 10 a.m. on September 13, 2002, and failed to do so.[5]

---

[4] The petitioner disputes the existence of the 10 a.m. requirement. The habeas court determined that the 10 a.m. requirement was part of the *Garvin* agreement, and there was evidence to support its determination. See *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 742, 937 A.2d 656 (2007) (when there is dispute as to terms of plea agreement, analysis turns on real intent of parties); *Martinez* v. *Commissioner of Correction*, 105 Conn. App. 65, 73, 936 A.2d 665 (2007) (intent of parties with respect to plea agreement question of fact subject to clearly erroneous standard of review), cert. denied, 285 Conn. 917, 943 A.2d 475 (2008).

[5] The following colloquy occurred during cross-examination of the petitioner:

"[The Respondent's Counsel]: . . . And what was the plea arrangement at that time?

"[The Petitioner]: Ten years suspended after six years with five years probation.

"[The Respondent's Counsel]: Okay. So, as shorthand, I'm going to say ten, six, five.

"[The Petitioner]: Yes.

"[The Respondent's Counsel]: You thought it was ten, six, five you were pleading out to. Correct?

"[The Petitioner]: Yes.

"[The Respondent's Counsel]: And didn't Judge Kavanewsky say, it's ten, six, five if you show up? And if you don't show up—

"[The Petitioner]: It's ten, eight, five.

"[The Respondent's Counsel]: And let me back up a second. It was ten, six, five and nolle on all open counts if you show up.

"[The Petitioner]: Mmm hmm. Yes, sir.

Accordingly, we conclude that the finding of the court that the petitioner had breached the terms of the agreement was not clearly erroneous.[6]

## II

The petitioner next claims that the court improperly concluded that he failed to prove that he had received ineffective assistance of counsel with respect to his motion to withdraw his guilty pleas.[7] We are not persuaded.

---

"[The Respondent's Counsel]: If you don't show up, it's ten, eight, five, and nothing else gets nolled. Right?

"[The Petitioner]: Because they thought I was a flight risk, yes, sir.

"[The Respondent's Counsel]: Right. And you understood that at that time. Right?

"[The Petitioner]: Yes.

"[The Respondent's Counsel]: You understood that there were two possible outcomes—

"[The Petitioner]: If I—

"[The Respondent's Counsel]:—ten, six, five, nolles, or ten, eight, five, nothing. Right?

"[The Petitioner]: Yes.

* * *

"[The Respondent's Counsel]: So, you understood that you were supposed to be in court at 10 a.m. on September 13, 2002.

"[The Petitioner]: Yes.

"[The Respondent's Counsel]: Is that correct?

"[The Petitioner]: Yes.

* * *

"[The Respondent's Counsel]: And you, in fact, didn't show up. Isn't that correct?

"[The Petitioner]: I did show up.

"[The Respondent's Counsel]: You showed up late.

"[The Petitioner]: Yes, sir."

[6] A court may impose a sentence reflecting a failure to fulfill a condition of the agreement so long as "[f]ulfillment of [the] condition [is] within the [petitioner's] control." *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997); *State* v. *Small*, supra, 78 Conn. App. 22. The habeas court found, and there is evidence supporting its finding, that the petitioner bargained for the term, understood what would happen if he was late and that his failure to fulfill the condition was within his control.

[7] The petitioner also argues that Feinstein was ineffective for failing to ensure that his August 21, 2002 arrest, docket number CR-02-0098452, was included as part of the plea agreement. The court did not address this claim but instead construed it as a claim of an improper plea canvass and concluded that the canvass was proper and fulfilled all the statutory and Practice Book requirements. We do not consider the claim because the court did not address it, and the petitioner did not seek an articulation

The following additional facts are relevant to our resolution of this issue. At the sentencing hearing on September 24, 2002, the petitioner made an oral motion, which he argued himself, to withdraw his guilty pleas. The petitioner argued that it was his understanding that the plea agreement included the file arising out of his August 21, 2002 arrest and maintained that he would not have accepted the agreement if he had known that the August 21, 2002 file was not included in the agreement. Feinstein noted that at the time of the pleas, he had not been assigned to the August 21, 2002 file. The state argued that all the requirements of a binding plea agreement were met and that the petitioner had not met his burden with respect to his request to withdraw his guilty pleas.

The trial court denied the petitioner's motion in an oral ruling. The court noted that according to the terms of the plea agreement, the petitioner was required to appear on time for sentencing and that if he did not comply, he would receive a longer sentence and the state would not nolle any charges. The court further reasoned that even if the August 21, 2002 arrest had appeared on the docket and had been contemplated by the plea agreement, it would have been nolled only if the petitioner had appeared on time. He did not appear on time.

There was evidence before the habeas court, which it was free to credit, that neither Feinstein, DeJoseph nor the court were aware of the August 21, 2002 arrest at the time of the plea negotiations. Feinstein testified that when the guilty pleas were entered on August 29, 2002, he was not aware of the petitioner's August 21,

pursuant to Practice Book § 66-5. See, e.g., *King* v. *Commissioner of Correction*, 73 Conn. App. 600, 603, 808 A.2d 1166 (2002), cert. denied, 262 Conn. 931, 815 A.2d 133 (2003).

2002 arrest[8] and that he had not been appointed on that file. DeJoseph testified that the petitioner's August 21, 2002 arrest came to his attention sometime after the petitioner entered his pleas on August 29, 2002, that his conversations with Feinstein indicated that he had no knowledge of the new arrest and that the August 21, 2002 file was not contemplated in the plea agreement.[9] DeJoseph further testified that the petitioner was a veteran of the criminal justice system and that his allegation that the August 21, 2002 arrest was included in the plea agreement was disingenuous because he had not yet been arraigned on that file at the time he entered his pleas on August 29, 2002. The petitioner testified that as of August 29, 2002, he had not been arraigned on a file arising out of the August 21, 2002 arrest and that Feinstein had not been appointed to represent him on that file.

We begin by setting forth our standard of review. "A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474

[8] On direct examination by the petitioner's counsel, Feinstein testified that he had no recollection of the petitioner informing him on August 29, 2002, that he recently had been arrested. On cross-examination, the respondent's counsel asked: "You testified earlier that at the time the petitioner pled guilty on August 29, 2002, you didn't even know about [the August 21, 2002 arrest]. . . . Is that correct?" Feinstein responded: "Correct."

[9] The petitioner testified that Feinstein knew about the August 21, 2002 arrest on August 29, 2002. The court was free not to credit the petitioner's testimony. "The habeas court, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." *Alexander* v. *Commissioner of Correction*, 103 Conn. App. 629, 638, 930 A.2d 58, cert. denied, 284 Conn. 939, 937 A.2d 695 (2007).

U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . .

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient to undermine confidence in the outcome. . . . The *Hill* court noted that [i]n many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. . . . A reviewing court can find against a petitioner on either ground, whichever is easier." (Citations omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721–23, 789 A.2d 1046 (2002).

A

The petitioner contends that Feinstein was ineffective with respect to his motion to withdraw his guilty pleas because he failed to request an evidentiary hearing on that motion and failed to request a recess to speak with the petitioner to advise him of his rights and burdens. We disagree.

The petitioner has failed to demonstrate that any prejudice resulted from Feinstein's performance.[10] The

_____

[10] Because we conclude that the petitioner has failed to satisfy the prejudice prong of *Hill*, we do not determine whether Feinstein's representation constituted deficient representation. See *Pierce* v. *Commissioner of Correction*, 100 Conn. App. 1, 12 n.5, 916 A.2d 864, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).

petitioner does not point out any additional arguments that could have been made or facts that could have been elicited in support of the motion had a recess and an evidentiary hearing occurred. In addition, the petitioner has not demonstrated that the outcome of the proceeding would have been different if Feinstein had requested a recess or an evidentiary hearing. The evidence before the habeas court revealed that the petitioner had not been arraigned on the August 21, 2002 arrest, Feinstein had not yet been appointed as the petitioner's attorney on that file and that the file had not been contemplated to be part of the plea agreement. See *Constantopoulos* v. *Commissioner of Correction*, 47 Conn. App. 828, 838, 708 A.2d 588 (examining whether outcome would have been different if defense counsel performed differently with respect to petitioner's pro se motion to withdraw guilty plea), cert. denied, 244 Conn. 927, 711 A.2d 726 (1998). Critically, the *Garvin* agreement contemplated that, in light of the petitioner's late arrival on September 13, 2002, any additional charges would not be nolled. Accordingly, we conclude that the petitioner was not denied the effective assistance of counsel.

## B

The petitioner also claims that Feinstein was ineffective for failing to advise him regarding his right to appeal from the trial court's denial of his motion to withdraw his guilty pleas. We decline to review this claim.

There is no constitutional mandate that to provide reasonably competent assistance, defense counsel always must inform a criminal defendant of the right to appeal from the judgment rendered after the acceptance of a guilty plea. *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 9, 761 A.2d 740 (2000). Instead, counsel has a constitutional obligation to advise a defendant of appeal rights "when there is reason to

think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. . . . *Roe* v. *Flores-Ortega*, [528 U.S. 470, 480, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)]." (Internal quotation marks omitted.) *Ghant* v. *Commissioner of Correction*, supra, 9–10. "[T]o show prejudice [when counsel fails to apprise a defendant of his or her appellate rights], a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." (Internal quotation marks omitted.) Id., 10.

The petitioner testified before the habeas court that he had told Feinstein that he wanted to appeal and that Feinstein had not consulted with him regarding the filing of an appeal. The petitioner further testified that when he returned to court approximately one month after the court had denied his motion to withdraw his guilty pleas, he asked Feinstein about appealing and that Feinstein answered that he thought the petitioner was going to file an appeal pro se. The petitioner did not question Feinstein regarding the failure to file an appeal from the denial of the motion to withdraw the guilty pleas.

The court's decision does not mention specifically Feinstein's alleged failure to consult with the petitioner regarding his right to appeal. The petitioner failed to request an articulation on this issue. See Practice Book § 66-5. Because the court's memorandum of decision is devoid of any findings or analysis on the issue, and because the petitioner did not seek an articulation, the record is inadequate, and we cannot review his claim. See *Bowden* v. *Commissioner of Correction*, 93 Conn. App. 333, 342, 888 A.2d 1131, cert. denied, 277 Conn. 924, 895 A.2d 796 (2006).

## III

The petitioner next claims that the court improperly rejected his claim that the prosecutor was improperly involved in his representation. We decline to review this claim.

The petitioner alleges that during the time in which he was trying to acquire enough money to hire Frederick Paoletti, DeJoseph's relative through marriage, as his trial counsel, DeJoseph continually "signed off" on misdemeanor arrest warrants, and Paoletti continually raised his fees. The petitioner contends that as a result of the increased number of charges, he was unable to afford to hire Paoletti or a "qualified private attorney" and was forced to accept the services of a public defender. After the petitioner decided not to hire Paoletti, he alleged that DeJoseph became hostile toward him. The court rejected the claim. Not reaching the substance of the offense, the court found that Paoletti never filed an appearance in the case. While these allegations may be cause for concern, we cannot review the petitioner's claim. The court's decision is devoid of any findings or analysis on that issue, and the petitioner did not seek an articulation; therefore, the record is inadequate and we cannot review his claim. See, e.g., *King* v. *Commissioner of Correction*, 73 Conn. App. 600, 603, 808 A.2d 1166 (2002), cert. denied, 262 Conn. 931, 815 A.2d 133 (2003).

The judgment is affirmed.

In this opinion the other judges concurred.