STEPHEN A. CRAWFORD *v.* COMMISSIONER
OF CORRECTION
(SC 18315)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued September 11—officially released November 24, 2009

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellant (petitioner).

*Timothy F. Costello*, deputy assistant state's attorney, with whom were *Ann E. Lynch*, assistant attorney general, and, on the brief, *David Shepack*, state's attorney, and *David Carlucci*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

KATZ, J. The petitioner, Stephen A. Crawford, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly found that he had procedurally defaulted with regard to his claims challenging the sufficiency of his plea canvass and the state's breach of his plea agreement that his sentences would be "fully" concurrent. The petitioner also claims that the habeas court improperly determined that he was not entitled to one day of sentence credit under General Statutes § 18-98d (a) (2) (A).[2] Finally, he claims that the habeas court improperly

---

[1] The habeas court granted the petitioner's petition for certification to appeal, and the petitioner appealed from the judgment of the habeas court to the Appellate Court. We then transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 18-98d (a) (2) (A) provides: "Any person convicted of any offense and sentenced on or after October 1, 2001, to a term of imprisonment who was confined to a police station or courthouse lockup in connection with such offense because such person was unable to obtain bail or was denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence in accordance with subdivision (1) of this subsection equal to the number of days which such person spent in such lockup, provided such person at the time of sentencing requests credit for such presentence confinement. Upon such request, the court shall indicate on the judgment mittimus the number of days such person spent in such presentence confinement."

Section 18-98d has been amended twice since the time of the petitioner's offenses and guilty pleas in the present case. See Public Acts 2004, No. 04-234; Public Acts 2006, No. 06-119. Those amendments made no changes that

rejected his claim that he had been deprived of his right to appeal because he had not been given notice of that right. We conclude that the habeas court properly resolved each of the petitioner's claims, and, accordingly, we affirm its judgment.[3]

The habeas court's memorandum of decision reflects the following facts, supported by the evidence produced by the state in the petitioner's criminal trial and by undisputed testimony adduced during the habeas trial. On March 23, 2003, the petitioner was apprehended by police minutes after robbing a convenience store and gas station in the town of Morris. The police found the stolen money, as well as the weapon used in the crime, on the petitioner. Two store employees thereafter identified the petitioner as the perpetrator. The petitioner admitted to having committed the robbery in Morris, as well as earlier robberies in Bridgeport, Trumbull and Seymour.

The petitioner first was arraigned in the judicial district of Litchfield for the Morris robbery, where he was charged with the crimes of robbery in the first degree in violation of General Statutes § 53a-134, larceny in the second degree in violation of General Statutes § 53a-123, threatening in the second degree in violation of General Statutes § 53a-62, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134, conspiracy to commit larceny in the second degree in violation of §§ 53a-48 and 53a-123, carrying a dangerous weapon in violation of General Statutes § 53-206 and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38 (Litch-

---

are relevant to this appeal. For purposes of convenience, we refer herein to the current revision of the statute.

[3] The petitioner also asserts that, even if the habeas court properly found that he had procedurally defaulted his claims, we should review his claims under the plain error doctrine. We address our rejection of this argument in part V of this opinion.

field case). He subsequently was arraigned in the judicial district of Fairfield for the Bridgeport and Trumbull robberies, and in the judicial district of Ansonia-Milford for the Seymour robbery.[4] The petitioner was held in lieu of bond in all of these cases.

The state offered the petitioner plea agreements in all of the cases dealing with the five separate incidents. Pursuant to plea agreements that are not the subject of this appeal, on July 21, 2003, the petitioner first pleaded guilty to the Bridgeport and Trumbull offenses, and those matters were continued for sentencing on November 6, 2003. On August 12, 2003, the petitioner also pleaded guilty to the Seymour offenses, and those matters were transferred to the judicial district of Fairfield for a consolidated sentencing with the Bridgeport and Trumbull offenses on November 6, 2003.

In the period between the petitioner's guilty pleas in the other cases, on August 1, 2003, the petitioner pleaded guilty in the Litchfield case. He was represented in that case by Lawrence Peck, who negotiated a plea agreement with the state's attorney, David Shepack, pursuant to which the petitioner would plead guilty to robbery in the first degree and conspiracy to commit robbery in the first degree in exchange for a sentence of twenty years, execution suspended after ten years. That sentence was to run concurrent to the sentence to be imposed in the cases that had been consolidated for sentencing in Fairfield. Peck discussed this offer as well as the state's evidence with the petitioner, and the petitioner decided to accept the offer. The trial court in the Litchfield case, *Bryant, J.*, accepted the plea after conducting a canvass, and continued the matter for sentencing to November 21, 2003. Peck found the plea canvass "unusual," but did not discuss with the

---

[4] Because the record is unclear as to the exact charges in the Fairfield and Ansonia-Milford cases, and because the petitioner's claims stem solely from the adjudication of the charges in the Litchfield case, we do not set forth the details of the Fairfield and Ansonia-Milford cases.

petitioner his right to withdraw the plea. The petitioner never indicated to Peck that he wanted to appeal the conviction in the Litchfield case.

On November 6, 2003, pursuant to the other plea agreements, the Fairfield sentencing court, *Damiani, J.*, sentenced the petitioner to a term of fourteen years imprisonment, execution suspended after ten years, and three years of probation. On November 21, 2003, the sentencing court in the Litchfield case, *Gill, J.*, sentenced the petitioner to a term of imprisonment of twenty years, execution suspended after ten years, and five years of probation. Judge Gill ordered that the sentence run concurrent to " 'other sentences imposed by courts of this state.' "

The respondent, the commissioner of correction, calculated the petitioner's presentence credit for the Fairfield consolidated offenses and determined that his release date was to be April 24, 2013. The respondent also calculated the petitioner's presentence credit for the offenses in the Litchfield case and determined that the petitioner's release date would be November 3, 2013. The difference in release dates was due to the application of § 18-98d (a) (1),[5] which provides that, once a

[5] General Statutes § 18-98d (a) (1) provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement. . . ."

Although § 18-98d (a) (1) has been amended since the time of the petitioner's sentencing; see footnote 2 of this opinion; the amendment is not relevant to this appeal. All references herein to § 18-98d are to the current revision of the statute.

defendant's presentence confinement credit is applied to one sentence, those days are no longer available to reduce any subsequently imposed sentences. See *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 818–19, 860 A.2d 715 (2004).

The record reflects the additional procedural history. The petitioner did not appeal from any of the judgments of conviction. Instead, on December 1, 2004, he filed a petition for a writ of habeas corpus. In his amended petition, the petitioner alleged in count one that his plea had not been knowingly, voluntarily and intelligently made because the Litchfield trial court, *Bryant*, *J.*, had failed to fully advise the petitioner of certain rights pursuant to Practice Book § 39-19[6] during the plea colloquy—specifically, the rights to a trial before a court or jury, to representation by counsel at trial, to confrontation and cross-examination of the state's witnesses at trial, to remain silent and to testify on his own behalf. Count two alleged that the petitioner had been deprived of his right to due process in that his sentence violated his right to be sentenced in accordance with his plea agreement under *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971),[7] because he had not received full presentence

---

[6] Practice Book § 39-19 provides in relevant part: "—Acceptance of Plea; Advice to Defendant

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . .

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[7] In *Santobello* v. *New York*, supra, 404 U.S. 262, the United States Supreme Court held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." This court first addressed a *Santobello* claim in *State* v. *Garvin*, 242 Conn. 296, 313–14, 699 A.2d 921 (1997).

credit on his sentence in the Litchfield case, and, therefore, his confinement was lengthened in breach of his understanding of the plea agreement with the state that his sentences would be "fully" concurrent. Count three requested that the habeas court award the petitioner one day of sentence credit under § 18-98d (a) (2) (A). Count four alleged that the petitioner was denied his right to appeal his conviction because he had not been given notice of his right to appeal. The return by the respondent denied the petitioner's material allegations and raised the affirmative defense of procedural default as to the claims in counts one and two. The petitioner's reply denied that procedural default applied to counts one and two, and alleged cause and prejudice as to count one.

The habeas court, *Swords, J.*, held a two day hearing, after which it denied the petition for a writ of habeas corpus. Specifically, the habeas court found that count one, alleging a defective plea canvass, had been procedurally defaulted and that the petitioner had not established cause and prejudice sufficient to overcome the default. When considering the procedural default issue, the habeas court relied on both the petitioner's failure to withdraw his guilty plea pursuant to Practice Book § 39-26[8] and his failure to file a direct appeal. With respect to count two, alleging breach of the plea agreement, the court concluded that this claim had been procedurally defaulted and also failed on the merits. Finally, the court concluded that count three failed because a habeas court does not have authority to grant sentence credit under § 18-98d (a) (2) (A), and that

---

[8] Practice Book § 39-26 provides: "Withdrawal of Plea; When Allowed

"A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

count four was entirely without merit. This appeal followed. Additional facts will be set forth as necessary.

Before we turn to the petitioner's claims we set forth our standard of review for habeas corpus appeals. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Questions of law and mixed questions of law and fact receive plenary review." (Internal quotation marks omitted.) *Correia* v. *Rowland*, 263 Conn. 453, 462, 820 A.2d 1009 (2003). The petitioner does not challenge the habeas court's factual findings. Rather, each of his claims raises either questions of law or mixed questions of law and fact, over which we exercise plenary review.

I

The petitioner first claims that the habeas court improperly found that he had procedurally defaulted his claim that his guilty plea was not knowing and voluntary. Within the context of this claim, the petitioner makes several contentions. First, he contends that the habeas court improperly relied in part on a ground that the respondent did not allege, the failure to appeal, and the default that the respondent did raise, the petitioner's failure to file a motion to withdraw his plea, is not the sort of "firmly established and regularly followed" procedural rule; (internal quotation marks omitted) *Ford* v. *Georgia*, 498 U.S. 411, 424, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); that will support a default. Second, he contends that, even if he did default the claim, the habeas court should have determined whether the default was excused under the less stringent deliberate bypass standard rather than the cause and prejudice standard. Finally, the petitioner contends that, even if the habeas court correctly applied the cause and prejudice standard to the procedural default, the

court improperly found that the petitioner had not established cause and prejudice as to this claim. We conclude that the habeas court properly found that there was a procedural default, properly applied the cause and prejudice standard to the default, and properly found that the petitioner did not establish cause and prejudice sufficient to preserve his defaulted claim.

A

We first address the petitioner's claim that the habeas court improperly found that his failure either to withdraw his plea or to file a direct appeal of his conviction constituted a procedural default of his claim alleging an inadequate plea canvass. As a preliminary matter, we must address the petitioner's claim that the habeas court improperly considered as a default his failure to file a direct appeal because the respondent alleged only that the petitioner had defaulted by failing to move to withdraw his plea in the trial court. We conclude that, because the petitioner did not raise a challenge to the habeas court's ability to consider his failure to appeal as a default, the court properly considered that ground for default and properly concluded that the petitioner had procedurally defaulted this claim for failure to file an appeal.

We first set forth our well settled precedent concerning procedural defaults. "When a habeas petitioner has failed to file a motion to withdraw his guilty plea or to challenge the validity of the plea on direct appeal, a challenge to the validity of the plea in a habeas proceeding is subject to procedural default." *Council* v. *Commissioner of Correction*, 286 Conn. 477, 489, 944 A.2d 340 (2008); *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 567, 941 A.2d 248 (2008). A respondent seeking to raise an affirmative defense of procedural default must file a return to the habeas petition responding to the allegations of the petitioner and

"alleg[ing] any facts in support of any claim of procedural default . . . ." Practice Book § 23-30 (b);[9] *Johnson* v. *Commissioner of Correction*, supra, 567. Only after the respondent raises the defense of procedural default in accordance with § 23-30 (b) does the burden shift to the petitioner to allege and prove that the default is excused. *Council* v. *Commissioner of Correction*, supra, 489; *Johnson* v. *Commissioner of Correction*, supra, 567.

In order to determine which defaults the habeas court properly considered, we note the following additional undisputed facts. In count one, the petitioner alleged that he had not deliberately bypassed the remedy of a direct appeal. The respondent, pursuant to Practice Book § 23-30, filed a return in which she alleged: "The petitioner cannot obtain habeas corpus review of his claims in [c]ount [o]ne. He did not raise these claims pursuant to Practice Book § 39-26[10] [providing for the withdrawal of a guilty plea] prior to the sentencing in this matter. Thus, these claims are procedurally defaulted and must be dismissed pursuant to Practice Book [§] 23-29 (5) and (2)."[11] The petitioner's reply denied that he had procedurally defaulted the defective canvass claim and denied that the procedural default doctrine applied to the claim.

---

[9] Practice Book § 23-30 provides: "(a) The respondent shall file a return to the petition setting forth the facts claimed to justify the detention and attaching any commitment order upon which custody is based.

"(b) The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

[10] See footnote 8 of this opinion.

[11] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . .

"(2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted . . .

"(5) any other legally sufficient ground for dismissal of the petition exists."

The parties thereafter submitted briefs to the court. In the respondent's pretrial brief, filed on February 21, 2007, she expanded the alleged procedural default of the defective canvass claim by submitting: "The petitioner failed to raise this claim pursuant to Practice Book § 39-26 in the trial court *or on direct appeal* and cannot raise it for the first time in this habeas corpus proceeding. In accordance with Practice Book § 23-31,[12] the petitioner's reply fails to allege adequate 'cause' for the default and 'prejudice' sufficient to excuse his default and permit review of these claims for the first time in this habeas corpus proceeding." (Emphasis added.) The petitioner's trial brief, filed on the second day of the hearing, May 3, 2007, did not assert that the court could not consider his failure to appeal, nor did the petitioner raise this issue during trial.

It is well settled that this court "shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." Practice Book § 60-5; see, e.g., *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 550, 911 A.2d 712 (2006) (declining to consider claim not raised before habeas court). "For this court to . . . consider a claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party."[13] (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, supra, 286 Conn. 498.

---

[12] Practice Book § 23-31 provides: "(a) If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply.

"(b) The reply shall admit or deny any allegations that the petitioner is not entitled to relief.

"(c) The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. The reply shall not restate the claims of the petition."

[13] The unfairness to the opposing party in the present case arises in part from the possibility that the state would have sought to amend its return had the petitioner timely raised such an objection. See *Brennan* v. *Brennan Associates*, 293 Conn. 60, 73–74, 977 A.2d 107 (2009).

The petitioner was on notice that the respondent claimed that the procedural default encompassed both the failure to withdraw the claim and the failure to directly appeal after the respondent filed her pretrial brief. Cf. *Azia* v. *DiLascia*, 64 Conn. App. 540, 558 n.13, 780 A.2d 992 (2001) (holding that issue arose after trial and therefore no objection was required to be raised during trial to preserve issue when defendant sought to challenge trial court's reliance on publications that had not been introduced into evidence at trial and defendant did not know about court's reliance until court's decision was issued). The petitioner had two days before the start of the trial and more than two months before filing his own trial brief to challenge the discrepancy between the respondent's return and her pretrial brief and the sufficiency of the return. The petitioner failed to do so. Moreover, the petitioner never filed a motion for articulation or reconsideration. Instead, the petitioner raised his objections to the potential deficiency in the respondent's return for the first time before this court, thereby failing to preserve his objection for review. The habeas court's decision resting both on the petitioner's failure to seek to withdraw his plea, and his failure to file a direct appeal therefore properly is before us.

Turning to the petitioner's claim that the habeas court improperly found procedural default because the requirement that a defendant must file a motion to withdraw a plea is not a " 'firmly established and regularly followed' " procedural rule pursuant to *Ford* v. *Georgia*, supra, 498 U.S. 424, we note that this claim is dependent on a conclusion that the habeas court properly could consider only the petitioner's failure to file a motion to withdraw the plea. Because we have concluded that, in the absence of an objection, the habeas court properly considered the petitioner's failure either to file a motion to withdraw the plea or to bring a direct

appeal, we need not reach the petitioner's claim that the failure to withdraw the plea, standing alone, does not constitute procedural default. Nor do we need to reach the respondent's contention that the " 'firmly established and regularly followed' " standard is applicable only in *federal* habeas proceedings. Instead, the posture of this habeas claim falls under the well established rule that, "[w]hen a habeas petitioner has failed to file a motion to withdraw his guilty plea *or* to challenge the validity of the plea on direct appeal, a challenge to the validity of the plea in a habeas proceeding is subject to procedural default." (Emphasis added.) *Council* v. *Commissioner of Correction*, supra, 286 Conn. 489; *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 567. Because it is undisputed that the petitioner did not appeal, and that such a remedy was available as of right, the habeas court correctly found that the petitioner procedurally had defaulted his inadequate canvass claim by failing either to move to withdraw his plea or to directly appeal his judgment of conviction.

B

The petitioner next claims that the habeas court improperly required him to establish cause and prejudice in order to overcome the procedural default. He contends that procedural defaults involving decisions reserved exclusively to a criminal defendant, such as whether to plead guilty, must be analyzed under the deliberate bypass standard pursuant to this court's decision in *McClain* v. *Manson*, 183 Conn. 418, 428–29 n.15, 439 A.2d 430 (1981), wherein this court applied that standard to this type of default. We disagree that a fair reading of *McClain* and this court's subsequent decisions adopting cause and prejudice as the standard for all procedural defaults, both trial and appellate, supports the petitioner's contention.

Because our own jurisprudence concerning habeas corpus procedural defaults has developed in tandem with federal habeas corpus jurisprudence, we briefly review the relevant federal precedents before proceeding to our own case law. In *Fay* v. *Noia*, 372 U.S. 391, 438, 82 S. Ct. 822, 9 L. Ed. 2d 837 (1963), the United States Supreme Court addressed the effect on federal habeas corpus review of a state prisoner's failure to comply with state court procedural requirements. See generally *Wainwright* v. *Sykes*, 433 U.S. 72, 82–83, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (discussing *Fay*). The "narrow question" presented in *Fay* was whether federal habeas corpus relief was barred when a state conviction rested upon a coerced confession obtained in violation of the fourteenth amendment and the defendant had been denied state postconviction relief because he had allowed the time for a direct appeal to lapse without seeking state appellate review of the trial court's admission of the confession. *Fay* v. *Noia*, supra, 394. The Supreme Court determined that, although federal habeas relief was not barred because of state procedural defaults,[14] federal courts had a limited discretion to deny relief to habeas petitioners who, "after consultation with competent counsel or otherwise, understandingly and knowingly [forgo] the privilege of seeking to vindicate [their] federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures . . . ." Id., 439.

After *Fay*, the United States Supreme Court took the view that it had failed to accord adequate weight to comity and finality of the state court judgments and,

---

[14] In so doing, *Fay* overruled a previous line of cases holding that, when a defendant had defaulted on a direct appeal as of right, "federal habeas was also barred unless petitioners could prove that they were 'detained without opportunity to appeal because of lack of counsel, incapacity, or some interference by officials.'" *Coleman* v. *Thompson*, 501 U.S. 722, 744, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

accordingly, steadily increased the power of federal courts to deny habeas corpus claims based on state procedural defaults by determining that such claims should be reviewed under a more stringent cause and prejudice standard. See *Coleman* v. *Thompson*, 501 U.S. 722, 745, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) ("[o]ur cases after *Fay* that have considered the effect of state procedural default on federal habeas review have taken a markedly different view of the important interests served by state procedural rules"); 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure (5th Ed. 2005) § 26.1, p. 1252 ("[d]uring the 1970s, the Supreme Court steadily expanded the [procedural default] doctrine, developing a broader category of claims on which federal habeas courts must deny relief because the petitioner violated a state procedural rule"). This change was accomplished by applying the cause and prejudice standard in a series of cases in which procedural defaults arose in a variety of circumstances. See, e.g., *Francis* v. *Henderson*, 425 U.S. 536, 96 S. Ct. 1708, 48 L. Ed. 2d 149 (1976) (failure to follow state procedural rule analogous to rule 12 [b] [2] of Federal Rules of Criminal Procedure); *Wainwright* v. *Sykes*, supra, 433 U.S. 72 (failure to follow state contemporaneous objection rule); *Murray* v. *Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (failure to include claim in appeal). These holdings limited *Fay* to its facts and rejected its "sweeping language." (Internal quotation marks omitted.) *Coleman* v. *Thompson*, supra, 747. To satisfy this standard, the petitioner must demonstrate both good cause for failing to raise a claim at trial or on direct appeal and actual prejudice from the underlying impropriety. Id., 750. This test is designed to prevent full review of issues in habeas corpus proceedings that counsel failed to raise at trial or on appeal for reasons of tactics, inadvertence or ignorance. *Valeriano* v. *Bronson*, 209 Conn. 75, 83, 546 A.2d 1380 (1988).

In *Coleman*, the Supreme Court explicitly overruled *Fay*, holding that the cause and prejudice standard applies to "*all cases* in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule . . . ." (Emphasis added.) *Coleman* v. *Thompson*, supra, 501 U.S. 750. Under this standard, state prisoners who have defaulted federal claims in state court cannot obtain federal habeas corpus review unless they can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. In setting out this standard, the Supreme Court emphasized the importance of the uniform application of procedural default standards, regardless of the specific nature of the procedural default. Id., 750–51 ("[b]y applying the cause and prejudice standard uniformly to all independent and adequate state procedural defaults, we eliminate the irrational distinction between *Fay* and the rule of cases like *Francis, Sykes* . . . and *Carrier*"). Specifically, the court noted that, "*Carrier* applied the cause and prejudice standard to the failure to raise a particular claim on appeal. There is no reason that the same standard should not apply to a failure to appeal at all. All of the [s]tate's interests—in channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors—are implicated whether a prisoner defaults one claim or all of them." Id., 750.

Although this court is not compelled to conform state postconviction procedures to federal procedures; *Vena* v. *Warden*, 154 Conn. 363, 366, 225 A.2d 802 (1966); our jurisprudence has followed the contours of the Supreme Court's adoption and subsequent rejection of the deliberate bypass standard. This court initially applied *Fay*'s deliberate bypass standard to collateral review by state

habeas courts in *Vena*, wherein the court "reiterate[d] our adherence to our policy which has allowed federal constitutional claims arising out of state court convictions to be presented and determined in our courts. This policy is supported by *Fay* . . . so far as it relates the circumstances under which a prisoner, who has not appealed his conviction, can still have his federal constitutional claims considered on habeas corpus." Id. The court thus held that "a petitioner may collaterally raise federal constitutional claims in a habeas corpus proceeding even though he has failed to appeal his federal constitutional claims directly to us if he alleges and proves . . . facts which will establish that he did not deliberately bypass the orderly procedure of a direct appeal." Id., 366–67. After *Vena*, Connecticut habeas courts considered the merits of petitioners' defaulted constitutional claims, unless the record demonstrated that a petitioner had either voluntarily, knowingly and intelligently waived or abandoned a known right to appeal. See, e.g., *D'Amico* v. *Manson*, 193 Conn. 144, 148, 476 A.2d 543 (1984); *Morin* v. *Manson*, 192 Conn. 576, 579, 472 A.2d 1278 (1984); *Cajigas* v. *Warden*, 179 Conn. 78, 82, 425 A.2d 571 (1979).

Mirroring the Supreme Court's incremental rejection of deliberate bypass in *Francis*, *Sykes*, and *Carrier*, this court also reevaluated its application of that standard. In *McClain* v. *Manson*, supra, 183 Conn. 423, which arose after *Sykes*, but before *Coleman* overruled *Fay*, a habeas petitioner had failed to appeal an allegedly improper sentence. In explaining why the court analyzed the question of whether the petitioner had procedurally defaulted his claim under the deliberate bypass standard, the court stated in a footnote on which the petitioner in the present case relies:[15] "The scope

---

[15] The respondent contends that the cited language from *McClain* is merely dicta. Although we note that, in *McClain*, both parties and the habeas court assumed that deliberate bypass was the correct standard, and therefore the standard was uncontested on appeal, this court sua sponte considered whether the proper standard had been applied. Nonetheless, the dispute

of the *Fay* holding making federal habeas corpus relief available has been limited in some later cases to a cause and prejudice standard, which is narrower than the waiver standard. . . . [S]ince . . . *Sykes* left intact its holding in *Fay* . . . *it remains undecided* which procedural waivers will be evaluated under *Fay*'s deliberate bypass standard and which under the narrow cause and prejudice test of *Sykes*. . . . It *appears* that the Supreme Court is more apt to find a habeas petitioner bound by a bypass with respect to a strategic or tactical decision of the kind normally committed to counsel, than with respect to decisions of the sort entrusted to the defendant himself. . . . Included in this latter category would be decisions whether to plead guilty, to [forgo] the assistance of counsel, or to refrain from an appeal. . . . Thus, despite the subsequent limitations on *Fay*, and because *Sykes left open the question* whether its cause and prejudice standard would apply in a *Fay* type case where the failure to take an appeal was involved, the ultimate responsibility that is upon the defendant himself to decide whether an appeal is to be taken persuades us to apply the deliberate bypass standard of *Fay* to this case." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 428–29 n.15. Contrary to the petitioner's view, it seems quite clear that this court retained the deliberate bypass standard for *Fay* type cases simply because it appeared under existing case law that this standard applied and there was no clear direction to the contrary from the United States Supreme Court.

The Supreme Court, however, unequivocally closed *McClain*'s "open question" in *Coleman* by holding that cause and prejudice applies to *all* procedural defaults,

between the parties in the present case as to the proper characterization of the language is irrelevent in light of our rejection of the petitioner's reliance on this footnote of *McClain* as requiring application of deliberate bypass in the present case.

including a habeas petitioner's failure to appeal. *Coleman* v. *Thompson*, supra, 501 U.S. 750 ("[w]e now make it explicit: [i]n all cases in which a state prisoner has defaulted his federal claims in state court . . . federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation"). Accordingly, in keeping with our previous case law indicating an intent to conform our state habeas procedures to those of the federal courts, this court reevaluated our state procedural default framework after *Coleman*, beginning with *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 419, 589 A.2d 1214 (1991), wherein this court adopted the cause and prejudice standard for claims that were procedurally defaulted at trial, but "expressly did not reach the related issue of whether the cause and prejudice standard should replace the deliberate bypass rule for claims procedurally defaulted on appeal"; *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 (1993); because that issue was not squarely before the court.

The opportunity to address appellate defaults arose two years later in *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 125, in which a habeas petitioner had challenged the application of the cause and prejudice standard to his failure to pursue on direct appeal his claim of unconstitutional jury composition. After reviewing the history of the deliberate bypass and cause and prejudice standards at both the federal and state levels, this court "conclude[d] that the . . . cause and prejudice standard should be employed to determine the reviewability of habeas claims that were not properly pursued on direct appeal." Id., 132. In doing so, the court made no distinction between the failure to bring an appeal, a decision entrusted solely to a defendant, and the failure to include certain claims in an appeal, a decision entrusted to counsel. Compare *Cole-*

*man* v. *Thompson*, supra, 501 U.S. 750 (concluding that there was no reason to apply different standard to failure to appeal than standard applied to failure to raise claim on appeal). Rather, the broad language of the decision encompassed *all claims* not properly pursued on appeal.

Since *Jackson*, this court consistently and broadly has applied the cause and prejudice standard to trial level and appellate level procedural defaults in habeas corpus petitions.[16] See, e.g., *Council* v. *Commissioner of Correction*, supra, 286 Conn. 489; *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 567; *Correia* v. *Rowland*, supra, 263 Conn. 462. Moreover, we have applied the cause and prejudice standard to procedural defaults directly analogous to the one presented here. For example, in *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 32–33, 779 A.2d 80 (2001), the petitioner entered pleas of nolo contendere to several charges and, despite the alleged illegality of the sentence thereafter imposed, he did not object to the sentence, move to withdraw his plea or file an appeal. We held that, "[b]ecause the petitioner has failed to follow the proper procedures by which to correct his sentence or to preserve his challenge to the sentence before having filed this petition . . . his petition is procedurally defaulted and, therefore, we will review the petitioner's claims . . . only if he can satisfy the 'cause and prejudice' standard of *Wainwright* v. *Sykes* [supra,

---

[16] This court applies different standards to claims of actual innocence; see *Summerville* v. *Warden*, 229 Conn. 397, 421–22, 641 A.2d 1356 (1994) (claims of ineffective assistance of counsel); see *Valeriano* v. *Bronson*, supra, 209 Conn. 84 ("[t]he similarity of the second part of the *Strickland* v. *Washington* [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] test and of the prejudice prong of the cause and prejudice test of *Wainwright* v. *Sykes* [supra, 433 U.S. 87] makes a threshold showing of cause and prejudice unnecessary for ineffective assistance of appellate counsel claims"). Because the petitioner has not made either of these claims, these standards are not relevant in the present case.

433 U.S. 87]." *Cobham* v. *Commissioner of Correction,* supra, 39–40. Even more recently, we held that, "[w]hen a habeas petitioner has failed to file a motion to withdraw his guilty plea or to challenge the validity of the plea on direct appeal, a challenge to the validity of the plea in a habeas proceeding is subject to procedural default. . . . The appropriate standard for reviewability . . . is the cause and prejudice standard." (Citation omitted; internal quotation marks omitted.) *Council* v. *Commissioner of Correction,* supra, 489. Similarly, we have noted that a defendant whose sentence has been executed, and therefore cannot withdraw his guilty plea, may file a writ of habeas corpus to challenge the constitutionality of his plea, but, "if this claim is not first raised on direct appeal, the defendant must satisfy the cause and prejudice standard of *Wainwright* . . . ." (Internal quotation marks omitted.) *State* v. *Das,* 291 Conn. 356, 371, 968 A.2d 367 (2009).

Despite this precedent, the petitioner contends that *McClain* created an exception to the application of the cause and prejudice standard that *Johnson* v. *Commissioner of Correction,* supra, 218 Conn. 403, and *Jackson* v. *Commissioner of Correction,* supra, 227 Conn. 124, did not abrogate. He contends, specifically, that, because we neither *explicitly* revisited defaults of procedures entrusted solely to a criminal defendant nor *explicitly* adopted *Coleman* or overruled *McClain,* *McClain* remains controlling precedent. We are not persuaded. It is true that, as a general rule, "a case stands only for those points explicitly covered in a decision." *State* v. *DellaCamera,* 166 Conn. 557, 561, 353 A.2d 750 (1974); *State* v. *Darwin,* 161 Conn. 413, 421–22, 288 A.2d 422 (1971). We have, however, acknowledged that case law may be overruled by subsequent inconsistent decisions. See *State* v. *John F.M.,* 285 Conn. 528, 541–42, 940 A.2d 755 (2008); *State* v. *Das,* supra, 291 Conn. 364–69. The broad language of *Jackson* v. *Commis-*

*sioner of Correction,* supra, 132, as well as our subsequent application of the cause and prejudice standard to *all* procedural defaults is inconsistent with *McClain's* application of cause and prejudice to *Fay* type claims. We further remind the petitioner that *McClain's* reasoning expressly was predicated on an assumption about federal law that later was refuted by the federal adoption of cause and prejudice for all procedural defaults in tandem with its overruling of *Fay*.

The petitioner raises a policy consideration in favor of applying the deliberate bypass standard to defaults of procedures reserved to defendants. Although the petitioner's contention would be more appropriate were he arguing that this court should now adopt the deliberate bypass standard rather than arguing that this court never rejected such a standard, we briefly will address his concerns. The petitioner contends that the cause prong of the cause and prejudice standard looks to actions of counsel, effectively treating counsel as an agent of the criminal defendant. This agency rationale, he argues, is flawed in the context of procedural decisions reserved solely to the criminal defendant because counsel is merely an advisor in these situations. Applying cause and prejudice to these defaults thus denies recourse to criminal defendants when counsel waives or defaults procedural rights reserved to defendants.

To the extent that we have affirmed that *Johnson* v. *Commissioner of Correction,* supra, 218 Conn. 403, and *Jackson* applied cause and prejudice to all procedural defaults, those decisions also implicitly rejected the petitioner's policy arguments in favor of the compelling policies of uniformity and finality. In *Johnson* v. *Commissioner of Correction,* supra, 218 Conn. 418–19, the court noted that the "evil consequences . . . [of] trial court defaults that delay the resolution of issues that should have been decided expeditiously by appeal also

arise when defendants inexcusably defer the filing or processing of an appeal and utilize habeas corpus in order to circumvent the appellate procedural bar." In *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 134, the court cited favorably the reasoning of the United States Supreme Court that "[a] [s]tate's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack. . . . [Such rules afford] . . . the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant's claim and to retry the defendant effectively if he prevails in his appeal. . . . This type of rule promotes not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case." (Internal quotation marks omitted.) The court also acknowledged that "[t]he 'special problems' regarding procedural defaults at trial . . . apply equally to procedural defaults on direct appeal, and militate in favor of our adoption of *one standard* by which to measure procedural defaults occurring at trial or on direct appeal." (Emphasis added.) Id., 133–34.

Finally, we note that a petitioner who has not moved to withdraw his guilty plea or challenged his plea on direct appeal need not establish cause and prejudice if he can fulfill the two-pronged test for ineffective assistance of counsel. See *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 570–71. That test, as laid out in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and modified for guilty plea cases in *Hill* v. *Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), requires petitioners to establish that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors,

the defendant would not have pleaded guilty and would have insisted on going to trial. *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 575–76. In the present case, the petitioner expressly disavowed any ineffective assistance of counsel claim, and we offer no opinion as to the success of such a claim.[17] We merely note that under our long-standing precedent, criminal defendants who have defaulted a claim because of counsel's failure to inform them of essential rights may seek relief by alleging and proving ineffective assistance of counsel.

## C

Having concluded that the habeas court applied the correct standard, we turn to the petitioner's claim that the habeas court improperly found that he had not demonstrated cause and prejudice sufficient to overcome the procedural default and warrant review of the merits of his inadequate canvass claim. We disagree.

---

[17] At oral argument before this court, the petitioner made the related argument that the cause and prejudice standard is flawed because it denies a petitioner recourse when attorney error *not rising to the level of ineffective assistance of counsel* causes the default of procedural rights reserved to the defendant. This result, however, is consistent with our well established precedent that "attorney error short of ineffective assistance of counsel does not adequately excuse compliance with our rules of trial and appellate procedure." (Internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 40; accord *Wainwright* v. *Sykes*, supra, 433 U.S. 87; *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 132, 135–36; *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 409. We also note that if an attorney causes a defendant to default a procedural right personal to the defendant, and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 835, 970 A.2d 721 (2009); the defendant likely will be able to establish ineffective assistance of counsel under the *Strickland* test, obviating the need to establish cause and prejudice. If the result would not have been different but for the attorney's conduct, we fail to see any manifest injustice that overcomes the countervailing policy arguments favoring the uniform adoption of the cause and prejudice standard.

The cause and prejudice standard "is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, [inadvertence] or ignorance . . . ." *Valeriano* v. *Bronson,* supra, 209 Conn. 83; see also *Cobham* v. *Commissioner of Correction,* supra, 258 Conn. 40. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. See *Johnson* v. *Commissioner of Correction,* supra, 285 Conn. 567. "[T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . [For example] a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some *interference* by officials . . . would constitute cause under this standard." (Emphasis added; internal quotation marks omitted.) Id., 568. Cause and prejudice must be established conjunctively. *Johnson* v. *Commissioner of Correction,* supra, 218 Conn. 419. If the petitioner fails to demonstrate either one, a trial court will not review the merits of his habeas claim. Id.

The record reveals the following additional facts. The petitioner alleged four separate "causes" for his default of claim one: (1) actions of the state, state courts, or other officials hindered compliance with the procedural rule or made compliance impracticable; (2) counsel was responsible for the default; (3) counsel forwent a meritorious claim against the known wishes of the petitioner; and (4) a judge, prosecutor, court clerk, or some other official interfered with the petitioner's ability to comply—or failed to take reasonable steps to facilitate the petitioner's compliance—with the applicable state procedural rule. Thus, claims one and four

essentially allege that an agent of the state caused the default, and claims two and three allege that the petitioner's counsel caused the default.[18] As to the first and fourth claims, the habeas court found that "[the petitioner] has presented nothing . . . to substantiate that there were actions of the state, state courts or other officials that hindered or interfered with [the] petitioner's ability to comply with the procedural rules or made compliance impracticable." These claims were therefore "utterly unsubstantiated and abandoned." As to the claim that the petitioner's counsel had caused the default by forgoing a meritorious claim, the habeas court found that the petitioner "did not present any evidence even remotely indicating that he made known to [counsel] that he somehow wanted to challenge the defective plea canvass. Thus, the third alleged cause is . . . unsubstantiated and deemed abandoned." The habeas court analyzed count two as a "quasi-cryptic ineffective assistance of counsel allegation" and found that the petitioner neither had alleged nor proved that counsel's performance was sufficiently deficient to establish cause.

We first turn to the petitioner's claims that actions or inactions of the trial court clerk, the trial judge and the prosecutor established cause for the procedural default. The petitioner contends that the habeas court improperly found that he had presented no evidence to support these claims, and therefore had abandoned them. Specifically, the petitioner contends that he presented evidence that: (1) the trial judge had failed to inform the petitioner of his right to appeal; (2) the trial clerk had "failed to facilitate" the petitioner's right to appeal the validity of his plea; and (3) the prosecutor had failed to alert the court to the constitutional infirmities of the plea. We note that the petitioner does not

---

[18] We will therefore aggregate claims one and four, and two and three in our analysis.

claim that any actions by state or court officials constituted cause for his procedural default. Rather, he claims that the fact that the record demonstrates that there was no *affirmative* effort to facilitate the petitioner's appeal sufficiently supported his allegations of cause. In other words, he claims that the absence in the record of any evidence of affirmative aid establishes omissions that constitute cause for his default.

In support of this argument, the petitioner claims that, because the decision to appeal is reserved to the criminal defendant, the relevant inquiry for cause is "what (if anything) impeded the petitioner's efforts [to appeal]." As a result, omissions that "hindered" or "fail[ed] to facilitate" the petitioner's compliance with procedural rules are, in his view, sufficient to establish cause. The petitioner cites to no legal authority, either within this jurisdiction or elsewhere, in support of this novel proposition favoring a rule that is essentially an end run around our established cause and prejudice jurisprudence. Under our well established precedent, omissions of officials, absent a duty to act,[19] do not satisfy the cause requirement unless they constitute interference with the petitioner's defense. The peti-

[19] This court never has recognized an affirmative duty to inform a defendant who pleads guilty of his right to appeal. Indeed, Practice Book § 43-30, governing the notification of the right to appeal, provides only that: "Where there has been a conviction *after a trial* . . . it shall be the duty of the clerk of the court, immediately after the pronouncement of the sentence or the notice of a decision on the application for a writ of habeas corpus, to advise the defendant in writing of such rights as such defendant may have to an appeal, of the time limitations involved, and of the right of an indigent person who is unable to pay the cost of an appeal to apply for a waiver of fees, costs, and expenses and for the appointment of counsel to prosecute the appeal." (Emphasis added.) We note that in a separate claim; see part IV of this opinion; the petitioner contends that the constitution imposes an affirmative duty to inform a criminal defendant who pleads guilty of his right to appeal. Because the petitioner failed to raise this claim properly either at trial or before the habeas court, we do not reach the merits of his argument.

tioner offers no explanation as to how the cited omissions interfered with his defense, and we therefore affirm the habeas court's conclusion that no conduct by an agent of the state or the court provided "good cause" for the petitioner's default.

The petitioner's claim that his counsel caused the default either by forgoing meritorious claims against the petitioner's known wishes or by failing to alert the petitioner to the options of withdrawing the plea or appealing the conviction suffers from the same defect. Under our well established precedent, "attorney error short of ineffective assistance of counsel does not adequately excuse compliance with our rules of . . . procedure." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, supra, 286 Conn. 489; accord *Correia* v. *Rowland*, supra, 263 Conn. 462; *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 40. The petitioner nonetheless contends that this standard should not apply to his claim of cause because the decision whether to enter a guilty plea is reserved to the criminal defendant and trial counsel only "acts in a supporting role." The petitioner does not, however, provide any case law in support of this novel theory of cause. We therefore hold that, because the petitioner has never alleged or proved ineffective assistance of counsel, the habeas court properly found that he could not establish cause on the basis of attorney error.

Because the habeas court properly determined that the petitioner had failed to demonstrate good cause for failing to raise the claim in count one on direct appeal, it was not required to address whether he had established prejudice. See *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 419. We therefore conclude that the habeas court properly decided that the petitioner had not established cause sufficient to overcome his procedural default and merit review of his substantive claim of an inadequate plea canvass.

## II

The petitioner's second claim of impropriety is that the habeas court improperly denied relief on count two of the petition, which alleged a breach of the petitioner's plea agreement in violation of *Santobello* v. *New York*, supra, 404 U.S. 257. See footnote 7 of this opinion. The habeas court found both that the petitioner had procedurally defaulted his habeas claim and that the claim failed on its merits. The petitioner challenges both of these determinations. We conclude that the habeas court properly found that the petitioner had defaulted his *Santobello* claim, and we therefore decline to review the merits of that claim.

We first set forth additional facts and procedural history relevant to this claim. As we have noted previously, the respondent calculated the petitioner's release date for the charges in the Litchfield case to be approximately six months later than his release date for the charges consolidated in Fairfield. This discrepancy resulted from the effect of § 18-98d (a) (1); see footnote 5 of this opinion; on the calculation of the petitioner's presentence credit. Before the habeas court, Peck, the petitioner's trial counsel in Litchfield, testified that he had understood that the Litchfield sentence would be concurrent to the Fairfield sentence, but that the state's offer would not include awarding presentence credit to the petitioner. The state's attorney had informed Peck that he would not lower his offer to compensate for the probable loss of the petitioner's presentence credit, and that he would object to any request for double presentence credit.

In count two of his amended petition, the petitioner alleged that he had entered his guilty pleas with the understanding that the Litchfield and Fairfield sentences would run concurrently. He further alleged that, because he had not received presentence credit for part

of the time he served in lieu of bond on the Litchfield sentence, the sentences were not fully concurrent. As a result, he claimed that he had been deprived of his right to due process because the respondent had lengthened his confinement in breach of his plea bargain with the state.

The respondent's return alleged that the petitioner could not obtain habeas review of the *Santobello* claim because the petitioner "did not raise this claim in a motion to correct an illegal sentence in accordance with Practice Book § 43-22[20] . . . . Thus, this claim is procedurally defaulted and must be dismissed . . . ." (Citation omitted.) In reply, the petitioner denied that he had defaulted the claim and that procedural default applied to the claim. The petitioner also alleged both that application of § 43-22 in his case violated due process and that he effectively had complied with the rule. The petitioner did not allege cause and prejudice.

The habeas court made several findings concerning procedural default. First, the court noted that, although the respondent had raised procedural default as to the claim in count two, the petitioner had not alleged any cause and prejudice. The court then found that, "[w]hether or not [the] petitioner could have raised the count two claim at the trial court level, he most assuredly could have done so by way of an appeal from the criminal conviction. . . . Consequently, the court finds [that] the petitioner has procedurally defaulted on the claim in count two. [The] [p]etitioner has also failed to allege and affirmatively show the required cause and prejudice . . . ." (Citations omitted.) Although the court determined that its conclusion obviated any need to address the merits of the petitioner's

[20] Practice Book § 43-22 provides: "Correction of Illegal Sentence

"The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

claim, it nonetheless examined the facts in evidence at length and concluded that there was no evidence that the agreement had contemplated "fully" concurrent sentences as the petitioner understood that term.

In his brief to this court, the petitioner contended that the habeas court's conclusion that the *Santobello* claim could have been raised by way of an appeal was legally incorrect. The petitioner also claimed that the failure to pursue a motion to correct could not constitute default because "the trial court lacks jurisdiction over [a] defendant's motion to correct." (Internal quotation marks omitted.) In his reply brief, however, the petitioner alleged for the first time that it was improper for the habeas court to rely on a default that had not been included expressly in the return, namely, his failure to appeal.

It is axiomatic that a party may not raise an issue for the first time on appeal in its reply brief. See, e.g., *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009); *Kramer* v. *Petisi*, 285 Conn. 674, 686 n.10, 940 A.2d 800 (2008). "Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997). We therefore decline to review the petitioner's belated claim that the habeas court improperly exceeded the scope of the pleadings.

We turn next to the issue properly raised in this appeal: whether the habeas court improperly concluded that the petitioner had procedurally defaulted the *San-*

*tobello* claim by failing to raise it on direct appeal and/ or via a motion to correct an illegal sentence. It is well established that, before raising a *Santobello* claim in the habeas court, a criminal defendant must raise the issue either on direct appeal or by filing a motion to correct an illegal sentence. See *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 737, 937 A.2d 656 (2007) ("the petitioner first was required to raise his *Santobello* claim via a motion to correct an illegal sentence or on direct appeal"); *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 38 ("before seeking to correct an illegal sentence in the habeas court, a defendant either must raise the issue on direct appeal or file a motion pursuant to [Practice Book] § 43-22 with the trial court"); see also *Zabian* v. *Commissioner of Correction*, 115 Conn. App. 144, 151, 971 A.2d 822 (2009) ("*Cobham* makes clear that a *Santobello* claim must first be raised by either a motion to correct an illegal sentence pursuant to Practice Book § 43-22 or on direct appeal").

Despite this well settled precedent, the petitioner contends that there was no default because he faced several impediments in following these procedures. Specifically, he claims that he could not bring a motion to correct an illegal sentence because it was the actions of the respondent in applying presentence credit, not the sentencing court, that deprived him of due process and, thus, under this court's case law, the trial court would lack jurisdiction over a motion to correct on that basis. He also claims that he could not bring a direct appeal because the presentence credits at issue were not a matter of record, could not be made part of the record because they did not exist at the time of the judgment in the criminal case, and a reviewing court may not consider matters outside the record.

With respect to the availability of a motion to correct, contrary to the petitioner's view of our case law, we

have held that "the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . Practice Book § 43-22, which provides the trial court with such authority, provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. . . . We previously have noted that a defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to § 43-22 with the judicial authority, namely, the trial court." (Citations omitted; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 37–38; see also *State* v. *Das*, supra, 291 Conn. 362 (noting that § 43-22 provides trial court with jurisdiction over challenge to illegal sentence). Our decisions in *Cobham* and *Orcutt* expressly delineate a procedure by which petitioners may raise *Santobello* challenges.[21] We thus are not persuaded by the petitioner's argument that the failure to bring a motion to correct an illegal sentence cannot as a matter of law comprise a procedural default.

---

[21] The petitioner relies on *State* v. *Lawrence*, 281 Conn. 147, 913 A.2d 428 (2007), and *State* v. *Carmona*, 104 Conn. App. 828, 936 A.2d 243 (2007), cert. denied, 286 Conn. 919, 946 A.2d 1249 (2008), for the proposition that the trial court would have lacked jurisdiction over a motion to correct his sentence because presentence credit issued by the department of correction was at issue. His reliance is misplaced. We note that *Carmona* relied on *Lawrence* for this proposition, but in *Lawrence* we held that, "[i]n order for the court to have jurisdiction over a motion to correct an illegal sentence [under Practice Book § 43-22] after the sentence has been executed, the sentencing proceeding, *and not the trial leading to the conviction*, must be the subject of the attack." (Emphasis added.) *State* v. *Lawrence*, supra, 158. *Lawrence* did not address, and does not control, whether § 43-22 gives trial courts jurisdiction over motions to correct sentences that are alleged to be illegal as enforced by the department of correction.

We do acknowledge, however, that the petitioner likely would have been foreclosed from bringing his *Santobello* claim on direct appeal because the sentence calculations were not part of the record. Nevertheless, because we have held that a *Santobello* claim first must be raised *either* on direct appeal *or* through a motion to correct an illegal sentence, and because the petitioner failed to avail himself of the latter procedure, which was available as of right, we conclude that the habeas court properly determined that the petitioner had procedurally defaulted his *Santobello* claim. The petitioner has neither pleaded nor proven cause and prejudice, and, accordingly, he is not entitled to review of the merits of this claim.

### III

The petitioner's third claim is that the habeas court improperly denied him one day of jail credit under § 18-98d (a) (2) (A); see footnote 2 of this opinion; for the day he was held in lockup prior to being placed in the custody of the department of correction. The habeas court found that the petitioner never had requested the credit from the sentencing court, and the petitioner does not contest this finding on appeal. Rather, the petitioner contests the habeas court's legal conclusion that it did not have authority under § 18-98d (a) (2) (A) to award the credit in a collateral proceeding. Specifically, the petitioner contends that the habeas court had authority because the presentence confinement credit is mandatory upon request. We agree with the habeas court that it lacked authority to grant the credit requested.

Whether the habeas court has such authority is an issue of statutory interpretation, which is a question of law over which we exercise plenary review. See, e.g., *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 371, 977 A.2d 650 (2009). When interpreting

a statute, "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . We interpret the words of the statute according to their ordinary meaning unless their context dictates otherwise." (Citation omitted; internal quotation marks omitted.) *Director of Health Affairs Policy Planning* v. *Freedom of Information Commission*, 293 Conn. 164, 170, 977 A.2d 148 (2009).

Section 18-98d (a) (2) (A) provides in relevant part: "Any person convicted of any offense and sentenced . . . to a term of imprisonment who was confined to a police station or courthouse lockup in connection with such offense because such person . . . was denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence in accordance with subdivision (1) of this subsection equal to the number of days which such person spent in such lockup, provided such person at the time of sentencing requests credit for such presentence confinement. Upon such request, the court shall indicate on the judgment mittimus the number of days such person spent in such presentence confinement."

In our view, this issue is definitively resolved by the legislature's qualification, "provided such person *at the time of sentencing* requests credit for such presentence confinement." (Emphasis added.) General Statutes § 18-98d (a) (2) (A). The statute clearly requires that, in order for a petitioner to receive jail credit, he must request the credit and he must do so *at the time of sentencing*. The timely request is thus a condition precedent to the court's ability to grant the credit. Cf. *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 7

n.8, 946 A.2d 1219 (2008). It also stands to reason that, because the request must be made at sentencing, a fortiori that request must be made to the sentencing court. Although we agree with the petitioner that the statute strongly indicates that the court has no discretion to deny the request when made; see *Washington v. Commissioner of Correction*, 287 Conn. 792, 820 n.14, 950 A.2d 1220 (2008) (language of § 18-98d governing presentence confinement credit is mandatory, as evidenced by legislature's use of word "shall"); see also *State v. Bletsch*, 281 Conn. 5, 17, 912 A.2d 992 (2007) ("shall" generally deemed mandatory); that mandate would apply only if the request were made timely. Because the petitioner failed to make the request at the time of sentencing, the habeas court correctly concluded that it did not have the authority to grant the credit on collateral review.

## IV

The petitioner also claims that the habeas court improperly rejected the claim, alleged in count four of his petition, that he had been denied his right to appeal because he was not given notice of his right to appeal from the judgment based on his guilty plea. Specifically, the petitioner contends that the habeas court improperly limited its analysis to relevant statutory sources rather than considering constitutional principles. In response to the respondent's assertion that this claim was not properly preserved, the petitioner contends that he is simply challenging the legal reasoning employed by the habeas court in rejecting this claim. We agree with the respondent that the petitioner did not assert a claim before the habeas court that his right to appeal was constitutionally based. Therefore, we decline to review this claim.

The record reflects the following additional facts and procedural history. In count four of his petition, the

petitioner alleged that he had a statutory right to appeal his conviction, that he was not given notice of his right to appeal, and that he was therefore denied his right to appeal. Similarly, in his trial brief, the petitioner again claimed that by statute and under the rules of practice he had a right to appeal, that he had a valid claim for an appeal, and that he would have appealed had he known of the right.[22] Although this claim was similar to the petitioner's contention that the failure of the trial court, *Bryant, J.,* to inform the petitioner of his right to appeal constituted cause for the petitioner's procedural default; see part I C of this opinion; he framed it as a separate and independent claim in both his petition and his trial brief. Accordingly, the habeas court addressed it as a separate issue and held that, because there are no rules of practice or statutory requirements mandating that a defendant be provided with notice of the right to appeal from a conviction arising from a guilty plea, the petitioner's claim was entirely without merit. The petitioner now claims that the habeas court improperly limited its analysis to statutory and Practice Book provisions rather than considering the due process implications of his claim.

As we previously have noted, we will not review a claim unless it was distinctly raised at trial. Practice Book § 60-5; see, e.g., *State* v. *Cecil J.*, 291 Conn. 813, 826 n.11, 970 A.2d 710 (2009); *Ajadi* v. *Commissioner of Correction,* supra, 280 Conn. 550. We may, however, review legal arguments that differ from those raised before the trial court if they are subsumed within or intertwined with arguments related to the legal claim raised at trial. See *Rowe* v. *Superior Court,* 289 Conn.

---

[22] The petitioner's entire argument consisted of the following: "Under the General Statutes and our rules of practice, [the petitioner] had a right to appeal the final judgment in his criminal case. There can be no dispute that the constitutionally invalid guilty plea is a nonfrivolous claim on appeal. As such, he was entitled to bring his appeal. [The petitioner] would have appealed had he known of the right."

649, 662–63, 960 A.2d 256 (2008); *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 569, 916 A.2d 5 (2007) (addressing alternate ground for affirmance not raised at trial because, inter alia, issue was "closely intertwined" with certified question); *State* v. *Bethea*, 24 Conn. App. 13, 17 n.2, 585 A.2d 1235 (reviewing issue not raised at trial but subsumed within issue raised), cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991). In the present case, the petitioner's constitutional claim cannot fairly be construed as subsumed within or inextricably intertwined with the statutory claim he raised before the trial court. To entertain such a claim now would amount to trial by ambuscade of the habeas court, a practice in which we will not engage. See *Gold* v. *East Haddam*, 290 Conn. 668, 678–79 n.9, 966 A.2d 684 (2009), citing *Konigsberg* v. *Board of Alderman*, 283 Conn. 553, 597 n.24, 930 A.2d 1 (2007); *Smith* v. *Andrews*, 289 Conn. 61, 77, 959 A.2d 597 (2008); *Council* v. *Commissioner of Correction*, supra, 286 Conn. 498.

## V

Finally, the petitioner contends that any claims that he has failed to preserve should be reversed as plain error. In support of this claim, the petitioner asserts that, as a result of the habeas court's failure to follow established law, he remains subject to an unconstitutional incarceration. We disagree.

"[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confi-

dence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Bowman*, 289 Conn. 809, 817, 960 A.2d 1027 (2008).

"[W]e recently clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . We made clear . . . that this inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . .

"In addition, although a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine, such a finding is not, without more, sufficient to warrant the application of the doctrine. Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Citations omitted; internal quotation marks omitted.) *State* v. *Coward*, 292 Conn. 296, 306–307, 972 A.2d 691 (2009).

The petitioner has demonstrated neither that the habeas court made plain and obvious errors nor that the failure to grant relief will result in manifest injustice. Indeed, the respondent has offered significant evidence

that the habeas court did not err at all. Moreover, reversal of the habeas court's judgment likely would result in a less favorable outcome than the sentence the petitioner received pursuant to the plea deal negotiated between his counsel and the state. The state's evidence against the petitioner, including his possession of the stolen money and the weapon used in the crimes, his identification by the store employees and his confessions, is extremely strong. Moreover, should the petitioner elect to go to trial, he would face a possible forty year sentence, rather than the concurrent ten year effective sentences he obtained pursuant to the pleas. As such, the petitioner has failed to establish that failing to grant relief will result in manifest injustice. We therefore conclude that there was no plain error.

The judgment is affirmed.

In this opinion the other justices concurred.